### PEAVY v. BOYD, et al.
No. 77-178 (33).

Circuit Court, Dade County, Probate Division.

September 30, 1977.

John R. Lindsey, Coral Gables, for the petitioner.

Rollo E. Karkeet, Coral Gables, and John W. Prunty, Miami, for William Shepard Boyd, as personal represenative, and for William Shepard Boyd and Perry Marcellus Boyd, Jr., respondents.

JOHN R. BLANTON, Circuit Judge.

This cause was heard on the petition to revoke probate filed by the contestant, Moselle Boyd Peavy, and the answer thereto filed by the proponents, William Shepard Boyd (individually and as personal representative) and Perry Marcellus Boyd, Jr., and the court having heard testimony of the witnesses, and having considered other evidence, makes the following findings of facts and conclusions of law —

The decedent, Emma Smith Boyd, was married to Perry Marcellus Boyd. They had three children, the contestant, Moselle Boyd Peavy, and the proponents, William Shepard Boyd and Perry Marcellus Boyd, Jr.

Perry Marcellus Boyd died testate on January 3, 1976 and his last will, executed on March 23, 1970, was probated in this court. Under his will, his wife, Emma Smith Boyd, took all of his estate. If his wife had predeceased him then, under his will, his estate would have been divided equally among his three children.

Emma Smith Boyd also executed a will on March, 23, 1970. Under her said will, her estate is divided equally among her three children. If her husband had survived her then, under said will, he would have taken all of her estate.

Emma Smith Boyd died on December 16, 1976. A new will executed by her on November 4, 1976 was presented by proponents to, and admitted to probate by, this court. Under said will, her estate is divided equally between the proponents, except for a devise of $1.00 to the contestant.

The contestant asks for revocation of the probate of decedent's will of November 4, 1976 on the grounds that the decedent lacked testamentary capacity, or, in the alternative, that the will is invalid by reason of undue influence by the proponents. The contestant also asks that decedent's will of March 23, 1970 be declared to be her last will.

For the most part of the 3-year period prior to the death of the decedent's husband on January 3, 1976, the decedent and her husband lived with the contestant and her family in contestant's home in Miami Springs, Florida. This arrangement was necessary because the decedent and her husband were both in poor health and, during a substantial part of said 3-year period, they could not properly care for themselves.

After the death of her husband, decedent's mental and physical health worsened and rapidly declined. She became forgetful and

confused and so physically weak that she often fell; accordingly, she required almost constant attention by the contestant and her family; consequently, on August 9, 1976 she was admitted to Jackson Memorial Hospital where she was confined until September 9, 1976; on that date she was transferred to a nursing home where she stayed until December 13, 1976; on that date she was transferred to Hialeah Hospital where she died three days later, at the age of 78.

A "Discharge Summary" prepared on September 9, 1976 by the staff physician at Jackson Memorial Hospital, who saw her there daily, states "She is now discharged markedly improved from when she came in, except for her mental status which is somewhat confused." However, the testimony of this physician showed that her improvement was relative and that in fact her health at discharge was poor, in fact so poor that she was not capable of managing her personal needs and she required confinement in a nursing home which would provide supervision for her by a registered nurse.

In summary, the medical testimony revealed the decedent was infirm in body and mind; and, that, although her physical and mental ailments were, to some degree, due to her age, they were mainly due to serious organic impairments which were progressive, and irreversible.

The lay testimony was supportive of the medical testimony; such testimony revealed that decedent was extremely sick in body and mind; that she could not properly evaluate situations and that her reactions to persons and conditions became variable and inconsistent with her normal thinking; such testimony also revealed that her state of mind became senile with that patheic senility wherein one is easily prevailed upon to turn against loved ones.

Although the evidence tends to support the contestant's contention that the decedent was incompetent to make her new will, its weight is not sufficient to sustain a finding of incompetency at the time she executed her new will on November 4, 1976. In this connection, the attorney who drafted the decedent's new will, and in whose presence she executed it in the nursing home, testified that in his judgment the decedent was competent to make a will. The other witness, the attorney's legal secretary, also testified that she felt decedent was competent to make a will.

However, although the evidence is not sufficient to sustain a finding of incompetency at the time decedent executed her new will on November 4, 1976, the evidence amply shows that said will is invalid by reason of undue influence by the proponents.

The proponents showed little interest in the health and welfare of the decedent and her husband, and they gave the contestant

little help with their care. However, in early September, 1976, when contestant asked that the proponents consult with her regarding the selection of a nursing home for decedent, and they then became aware of the decedent's hopeless condition, their attitude towards the decedent suddenly changed. Thereafter, they took a keen interest in her and in her affairs. They began to visit her frequently, in fact the proponent William Boyd began to visit her almost daily.

On about October 20, 1976 the contestant and her husband took a trip to New York. Upon their return on or about October 29, the proponent Perry Boyd telephoned the contestant at her residence and informed her that the decedent had given a power of attorney to the proponent William Boyd and that she should turn over all of the decedent's financial papers to William. Prior to that time, the contestant had handled decedent's business affairs; and, for some time before the death of decedent's husband, contestant had handled his business affairs too.

On the day following the above telephone call, the decedent announced that she had disowned contestant as her daughter because she was spending all of her money and keeping her a prisoner in the nursing home; she also announced that the proponent William Shepard Boyd was going to get her out of the nursing home.

The proponent William Boyd was present in late October or on the 1st or 2nd of November, 1976 when the decedent expressed a desire to make a new will. He called the attorney and made the arrangements for him to visit the decedent at the nursing home on November 2, 1976 to discuss the new will; and, he was present at the nursing home when the attorney arrived to discuss the new will with the decedent. On November 4, 1976 the proponent William Boyd was present at the nursing home when the attorney brought the will to decedent for its execution; and, he was present at the time of its execution. The proponent William Boyd was named as personal representative in the new will. Both of the proponents substantially gained under the new will. The proponents kept the new will a secret from the contestant, and she did not learn of its existence until after the proponents caused it to be admitted to probate on January 10, 1977.

On the day after decedent executed her new will she executed a written direction to her bank to substitute the name of the proponent William Shepard Boyd, for contestant's name, on her joint checking and saving accounts; such writing was prepared by the proponent William Shepard Boyd; he had it signed by the decedent, and he delivered it to the bank.

The evidence amply shows that a confidential relationship did exist and that the decedent's will of November 4, 1976 was procured by undue influence, and the court so finds.

It is therefore adjudged that the instrument purporting to be the last will of Emma Smith Boyd bearing date November 4, 1976 presented to, and admitted to probate by, this court is declared to be invalid.